UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT G. ROAM,<br><br>          Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>          Defendant. | CASE NO.    C07-5662KLS<br><br>ORDER AFFIRMING THE COMMISSIONER'S DECISION REGARDING CESSATION OF DISABILITY BENEFITS |

Plaintiff, Robert G. Roam, has brought this matter for judicial review of the decision to cease his disability insurance benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 71 years old.[1] Tr. 43. Based on an application for disability insurance benefits he filed on May 9, 1989, plaintiff was found to be disabled beginning April 26, 1989. Tr. 26. A review of plaintiff's disability was performed on November 14, 1995, at which time it was initially determined that

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
Page - 1

plaintiff's disability should be continued. Tr. 29, 47.  On May 31, 2001, plaintiff's disability was reviewed again, at which time it was initially determined that his disability ceased effective March 1997, based on substantial work activity he had allegedly performed. Tr. 26, 121-22.

Plaintiff filed a request for reconsideration of that decision on August 10, 2001, but it was affirmed on reconsideration on September 19, 2001. Tr. 26, 125, 136-37.  Plaintiff filed a request for a hearing, and on December 23, 2003, a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff appeared and testified without counsel, although he was advised of his right to representation. Tr. 196-204. On January 16, 2004, the ALJ issued a decision, in which he found plaintiff's disability ceased in March 1997, due to his having engaged in substantial gainful activity, including having performed work under assumed names and an assumed social security number. Tr. 189-91.  Plaintiff's request for review of that decision was denied by the Appeals Council on October 7, 2004. Tr. 205.

Plaintiff appealed the matter to the United States District Court for the District of Colorado, which remanded it to the Commissioner for further consideration on January 24, 2005. Tr. 208-11.  The Appeals Council in turn remanded the matter to the same ALJ to conduct further proceedings consistent with the district court's order, noting specifically that the record did not contain conclusive findings that plaintiff had fraudulently assumed another name and social security number. Tr. 212-15.  A supplemental hearing was scheduled to be held on September 6, 2005, but it was postponed because plaintiff stated that he would not appear due to a travel hardship, that he would not swear in at the hearing if was forced to attend, and that he had nothing more to add to the first hearing. Tr. 224-27.

On October 5, 2005, the ALJ issued a decision finding no basis to revise the prior decision, again determining that plaintiff's disability had ceased for the same reasons. Tr. 231-32.  The Appeals Council, however, found the ALJ had not properly further developed the record as directed in its previous order, and therefore remanded the matter to another ALJ to do so, including obtaining the results of an investigation of plaintiff conducted by the Social Security Administration's ("SSA") Office of the Inspector General. Tr. 236-39.  Plaintiff did not appear at a further supplemental hearing held on May 25, 2006, having informed the ALJ prior thereto that he needed $400.00 to get to the hearing, and that he again would not be sworn in at the hearing and would not do anything but listen. Tr. 27, 276-78, 344-50.

On June 5, 2006, the second ALJ issued a decision finding specifically in relevant part:

(1) plaintiff was disabled within the meaning of the Social Security Act beginning April 26, 1989;

(2) plaintiff completed a trial work period that began in October 1993 and ended in February 1997;

(3) after completing his the trial work period, plaintiff first performed substantial gainful activity in March 1997;

(4) plaintiff's disability ended in March 1997, the first month after the completion of the trial work period in which he engaged in substantial gainful activity; and

(5) benefits were due during the reentitlement period for the months of December 1997, March 1998, and July 1998, through the month before the month that he attained the age of 65.

Tr. 26-33. The Appeals Council declined to assume jurisdiction of the case on April 14, 2007. 20 C.F.R. § 404.984. The second ALJ's decision therefore became the Commissioner's final decision after sixty days. Id.

On June 21, 2007, and July 5, 2007, respectively, plaintiff filed an application to proceed *in forma pauperis* and a complaint with the United States District Court for the District of Colorado seeking review of the ALJ's decision.[2] (Dkt. #23-2 and #23-4). On November 15, 2007, the Colorado district court granted defendant's unopposed motion to transfer the matter to this Court. (Dkt. #23-25). Plaintiff has submitted an opening brief consisting of the following statement:

> I am accused of working under another name and SSA No#. That is not true. At my first hearing the federal judge told Social Security to go back and reconsider. I thought I had proven, or won no fault or case dismissed. But SSA came in the back door and, someone put in my SSA file documents, that are a fraud. I have never tried to change my name. In my opinion, some people in SSA need to be in jail. Again I am guilty of nothing.

(Dkt. #33). Plaintiff is proceeding in this matter *pro se*. He has not filed a reply to defendant's response (Dkt. #34) to his opening brief. For the reasons set forth below, the Court disagrees with plaintiff that the

---

[2] As indicated herein, plaintiff's complaint was filed more than sixty days after the Appeals Council declined to assume jurisdiction. A party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 (claimant may file action in federal court within 60 days after the date notice of the Appeals Council's action is received); 20 C.F.R. § 404.982 (any party to Appeals Council's decision or denial of review may request time for filing action in federal court be extended). This "sixty-day time limit is not jurisdictional, but is instead a statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991). As such, failure to file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c)). Because the Commissioner failed to raise the statute of limitations as an affirmative defense in her responsive pleading, the issue is waived, and the undersigned will deal with this matter on its merits.

ORDER
Page - 3

ALJ erred in determining plaintiff's disability had ceased.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. Determinations Regarding Cessation of Disability

A recipient of disability insurance benefits "may be determined not to be entitled to such benefits" based on "a finding that the physical or mental impairment" for which those benefits "are provided has ceased, does not exist, or is not disabling," if substantial evidence demonstrates that "there has been any medical improvement in" the recipient's impairments – other than medical improvement unrelated to the recipient's ability to work – and the recipient is "able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1)(B). To that end, the Commissioner "from time to time" conducts an evaluation of a recipient's impairments, known as a "continuing disability review," to determine if the recipient "is still eligible for" disability benefits. 20 C.F.R. § 404.1589. A continuing disability review may be begun "for any number of reasons," including a "failure to follow the provisions of the Social Security Act" or the Commissioner's own regulations. Id.

The Commissioner follows eight "specific steps in reviewing the question of whether" a recipient's disability continues:

(1) At step one, is the recipient "engaging in substantial gainful activity"? If so, the recipient's disability will be found to have ceased.

(2) At step two, if the recipient is not engaging in substantial gainful activity, does he or she "have an impairment or combination of impairments which meets or equals the severity of an impairment listed in" 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the recipient's disability will be found to continue.

(3)  At step three, has there been "medical improvement as shown by a decrease in medical severity"? If so, the review proceeds on to step four. If not, the review proceeds on to step five.

(4)  At step four, is the medical improvement related to an increase in the recipient's "residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination"? If not, the review proceeds on to step five. If so, the review proceeds on to step six.

(5)  At step five, if there has been no medical improvement or if such improvement is not related to an increase in the recipient's residual functional capacity, do any of the exceptions to medical improvement in 20 C.F.R. § 404.1594(d) and (e) apply? If no such exception applies, the recipient's disability will be found to continue. If an exception in 20 C.F.R. § 404.1594(d) applies, the review proceeds on to step six. If an exception in 20 C.F.R. § 404.1594(e) applies, the recipient's disability will be found to have ceased.

(6)  At step six, if medical improvement is related to the recipient's residual functional capacity or if one of the exceptions in 20 C.F.R. § 404.1594(d) applies, are all of the recipient's "current impairments in combination" severe? If the residual functional capacity assessment conducted at step four "shows significant limitation" in the recipient's "ability to do basic work activities," the review proceeds on to step seven. If there is no significant limitation, the recipient's impairments "will not be considered to be severe in nature," and the recipient "will no longer be considered to be disabled."

(7)  At step seven, if the recipient's impairment is severe, is the recipient able to engage in substantial gainful activity, and – based on the recipient's residual functional capacity – is the recipient able to perform the work he or she did in the past? If so, disability will be found to have ceased.

(8)  At step eight, if the recipient is unable to do the work he or she did in the past, is the recipient able to do other work in light of his or her residual functional capacity, age, education and past work experience? If so, disability will be found to have ceased. If not, disability will be found to continue.

20 C.F.R. § 404.1594(f).

With respect to substantial gainful activity determinations made at step one, the Commissioner's regulations provide for a "trial work period," during which the recipient "may test" his or her "ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). During this period, the recipient "may perform services" – i.e., "any activity . . . even though it is not substantial gainful activity, which is done for employment . . . for pay or profit, or is the kind normally done for pay or profit" – "in as many as 9 months," which "do not have to be consecutive." 20 C.F.R. § 404.1592(a), (b). Such services will not be considered to show that the recipient's disability has ended until they have been performed "in at least 9 months." 20 C.F.R. § 404.1592(a). "[A]fter the trial work period," however, work performed "during the trial work period" will be considered in determining whether the recipient's disability had "ended at any

1 time after the trial work period." Id.  For the years of 1990 to 2000, work performed by a recipient will be
2 considered to be "services" if his or her "earnings in a month" amounted to more than $200.00. 20 C.F.R.
3 § 404.1592(b)(1)(i).

4 The Commissioner's regulations also provide for a "reentitlement period," which "is an additional
5 period after 9 months of trial work during which" a recipient "may continue to test" his or her ability to
6 work. 20 C.F.R. § 404.1592a(a).  The first time a recipient performs substantial gainful activity during the
7 reentitlement period, the recipient's disability will be found to have ceased. 20 C.F.R. § 404.1592a(a)(1).
8 A recipient "will be paid benefits for the first month after the trial work period" in which he or she engages
9 in substantial gainful activity, "and the two succeeding months," whether or not substantial gainful activity
10 is engaged in during those months. 20 C.F.R. § 404.1592a(a)(2)(i).  Thereafter, benefits will not be paid
11 for any month in which the recipient engages in substantial gainful activity. Id.  However, if after the
12 month for which disability was found to have ceased for that reason, the recipient stops engaging in
13 substantial gainful activity "in a month during the reentitlement period," benefits "may be started again
14 without a new application and a new determination of disability." Id.

15 If work is performed during the reentitlement period, and the recipient's disability was found to
16 have ceased during that period, entitlement to disability benefits will be found to have terminated in the
17 first month in which the recipient "engaged in substantial gainful activity after the end of the reentitlement
18 period." 20 C.F.R. § 404.1592a(a)(3)(i).  If, on the other hand, disability is not found to have ceased during
19 the reentitlement period due to the recipient's work activity, the Commissioner then determines whether
20 the recipient's disability ceased because he or she engaged in substantial gainful activity after that period.
21 20 C.F.R. § 404.1592a(a)(3)(ii).  In that case, the recipient will be paid benefits for the month in which his
22 or her disability "ceased and the succeeding two months," after which "entitlement to a period of disability
23 or to disability benefits terminates." Id.

24 II.     The ALJ's Disability Cessation Determination Was Proper

25 In this case, as noted above, the ALJ found plaintiff's disability had ceased in March 1997, the first
26 month that he performed substantial gainful activity following completion of his trial work period. Tr. 33.
27 Specifically, the ALJ found that plaintiff's trial work period began in October 1993 and ended in February
28 1997. Tr. 29-31.  This was based on work records and other documentary evidence, including the Office of

Inspector General's investigation, indicating that plaintiff had performed work for various employers both under his own name and under an assumed name and social security number. Id.; see also 49-116, 126-29, 143-48, 246-68. In particular, the ALJ noted that the Office of the Inspector General had determined that, based on its investigation, plaintiff and William Farmer "were the same person," and that work performed under these two identities amounted to more than $200.00 per month in September and October 1993, July and September through December 1996, and January and February 1997. Tr. 30.

Specifically in regard to the evidence in the record that plaintiff and William Farmer are the same individual, the ALJ found as follows:

> In reviewing the evidence, the undersigned notes that the date and place of birth and mother's surname are identical on the social security number applications for both Robert Roam and William Farmer. Robert Roam's application indicates that he use [sic] the surname of Farmer, and lists his mother's given names as Nellie Vera, while William Farmer's application reveals that he used the surname Roan and that his mother's given name as Vera. The father's first name is identical on the applications, although the last name is spelled "Roan" instead of "Roam" on the Farmer application, and William Farmer also claims the previous name "Roan". The Colorado identity card signed by R.G. Roan and the driver's license signed by W. Farmer are also strikingly similar. The identification card for Robert Gene Roam and the driver's license assigned to the names of Robert Gene Roam/William Roam Farmer both use the social security number assigned to William Farmer, and provide identical dates of birth which also match the date of birth provided on the social security number applications, as well as bear identical heights, weights, hair colors and eye colors. Finally, William Roam Farmer provided an emergency contact name of Robert Roam, and a review of the claimant's record indicates that he had a son named Robert G. Roam, Jr., who had applied for benefits on his record as a minor (Exh. B1, p.2). The undersigned accords significant weight to the similarities and ties within these documents, and concludes that the preponderance of evidence establishes that the claimant and William Farmer is one and the same individual, and that he has also used the names of Robert Farmer, Will Farmer, Will R. Farmer, William Roam Farmer and William Roan.

Tr. 31. The ALJ also addressed plaintiff's denials that he had worked under an assumed identity:

> During the first hearing, the claimant testified that he had been confused with another individual and that the State of Colorado admitted to him that a mistake had been made. He testified further that the fingerprints on the two licenses were for different individuals, and that he had a valid driver's license. He denied that he had ever sought a different social security number card or that he had ever worked under any other identity. Since appearing for the first hearing, the claimant has provided no additional statements or evidence in support of his contentions, other than to indicate that he would not agree to, or admit to, anything further.
>
> . . . The Administrative Law Judge does not find the arguments of the claimant to be persuasive and concludes that he is not a credible witness.

Id. The Court finds the substantial evidence in the record supports the ALJ's findings here. In particular, the Court notes, as did the ALJ, that plaintiff provided no specific or reliable evidence to contradict those findings. Nor has plaintiff presented any further evidence or persuasive argument to the Court, and merely

ORDER
Page - 7

offers in his opening brief more general assertions of innocence and unfounded allegations of wrongdoing on the part of the Commissioner.

The ALJ also properly found plaintiff's earnings in March 1997, $921.16, exceeded the applicable standard for substantial gainful activity. Tr. 31-32; <u>see also</u> 20 C.F.R. § 404.1574(b)(2) (average earnings of greater than $500.00 per month during months of January 1990 through June 1999, ordinarily will show claimant has engaged in substantial gainful activity). This also was the first month after plaintiff's trial work period ended, and thus the month when his reentitlement period began. <u>See</u> Tr. 30, 32, 72; <u>see also</u> 20 C.F.R. § 404.1592a(b) (reentitlement period begins with first month following completion of 9 months of trial work). Evidence in the record further supports the ALJ's determination that plaintiff was due benefits only "for the months of December 1997, March 1998, and July 1998, through the month before the month" he attained the age of 65, as in all other months during the 36-month reentitlement period, plaintiff engaged in substantial gainful activity.[3] Tr. 32, 72-103. Accordingly, the ALJ properly found plaintiff's disability had ceased in March 1997. Tr. 33.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined that plaintiff 's disability had ceased in March 1997. Accordingly, the ALJ's decision hereby is AFFIRMED.

DATED this 4th day of September, 2008.

Karen L. Strombom
United States Magistrate Judge

---

[3] The reentitlement period ends with (1) "[t]he month before the first month in which" the recipient's "impairment no longer exists or is not medically disabling," or (2) "[t]he last day of 36th month following end of" the trial work period if the recipient is entitled to disability benefits after December 1987, whichever is earlier. 20 C.F.R. § 404.1592a(b). In addition, "[w]hen disability ends after November 1980," a recipient's "period of disability ends . . . [t]he month before the month in which" he or she attains "full retirement age," which for plaintiff is 65 years. Tr. 43; 20 C.F.R. § 404.321(c)(1); 20 C.F.R. § 404.409(a).

ORDER
Page - 8